Timothy P. Landis, OSB No. 92617
TIMOTHY LANDIS, P.C.
One S.W. Columbia Street
Suite 1110
Portland, Oregon 97258
Tel: (503) 220-1331
Fax: (503) 227-7829
Email: tim@tlandislaw.com

Michael D. Hausfeld
Sathya S. Gosselin
Swathi Bojedla
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
Email: mhausfeld@hausfeld.com
       sgosselin@hausfeld.com
       sbojedla@hausfeld.com

[Additional counsel listed on signature page]

*Counsel for Plaintiff Gold Medal LLC d/b/a Run Gum*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **GOLD MEDAL LLC D/B/A RUN GUM**,<br>    Plaintiff,<br><br>v.<br><br>**USA TRACK & FIELD and UNITED STATES OLYMPIC COMMITTEE**,<br>    Defendants. | Case No.: 6:16-cv-92<br><br>COMPLAINT<br>Antitrust Action (15 U.S.C. § 1)<br>DEMAND FOR JURY TRIAL |

Plaintiff Gold Medal LLC d/b/a Run Gum ("Run Gum"), by and through its undersigned attorneys, and based on its experience, the investigation of counsel, and upon information and belief, alleges as follows:

## INTRODUCTION

1.      This action arises out of the anticompetitive and unlawful conduct of USA Track & Field ("USATF"); the United States Olympic Committee ("USOC"); and various other unnamed co-conspirators in jointly agreeing and conspiring to prevent certain businesses—while permitting others—from sponsoring individual athletes at the upcoming July 1-10, 2016 U.S. Olympic Track & Field Team Trials in Eugene, Oregon ("the Olympic Trials"), in exchange for sponsor identification on the athletes' competition apparel. This complete foreclosure of a valuable commercial opportunity, which is vigorously enforced, is a classic group boycott that injures would-be sponsors (and athletes), lacks any legitimate business justification or pro-competitive effects, and is illegal *per se*. USATF, the USOC, and their co-conspirators cannot curtail competition by picking and choosing eligible market participants and excluding the rest.

2.      Run Gum brings this suit to challenge, as illegal agreements, all USATF and USOC rules and regulations that prohibit or otherwise limit ***the type*** of individual sponsors that track & field athletes can display on their competition tops (vests/singlets), competition bottoms (shorts/half-tights), leotards (one piece speed suits, including upper body and lower body), tops, t-shirts, sweatshirts, rain jackets, and lower body attire at the Olympic Trials. Run Gum does not challenge as illegal generally applicable USATF and USOC rules and regulations that cap or otherwise limit ***the size, number, and placement*** of individual-sponsor identifications that athletes can display on their competition tops (vests/singlets), competition bottoms (shorts/half-

tights), leotards (one piece speed suits, including upper body and lower body), tops, t-shirts, sweatshirts, rain jackets, and lower body attire at the Olympic Trials.

3.      By this action, Run Gum seeks to preliminarily and permanently enjoin each defendant from violating federal and state antitrust laws, thereby leveling the playing field among sponsors of track & field athletes at the Olympic Trials.

## FACTUAL ALLEGATIONS

### Background

4.      Every four years, USATF—the national governing body ("NGB") for track & field—organizes and hosts the Olympic Trials, where the greatest track & field athletes in the United States compete to earn a position on the U.S. Olympic team. This multi-day event is the zenith of track & field in this country—the culmination of nearly half a decade of hard work and perseverance. Given the unique nature and infrequency of the Olympic Trials, the public interest is overwhelming. In-person attendance typically exceeds 20,000, a sell-out crowd, with millions more watching the nationwide broadcast on NBC (and digital streaming services) and following on social media.

5.      For elite U.S. track & field athletes, the Olympic Trials present a singular opportunity to demonstrate their physical prowess, discipline, training, and coaching, all with the hope of ultimately representing their country at the Olympic Games. No less important, the Olympic Trials expose athletes to scores of potential fans, coaches, and sponsors, helping each athlete sustain and build their individual brands while generating income from individual sponsorships that they need to train and compete without resorting to a second or third job.

6.      USATF receives substantial financial benefits from organizing and hosting the Olympic Trials, including from a television broadcast agreement with NBC and from its own

"official sponsors," who are eager to be featured in conjunction with the trials. Notably, only one of USATF's six "official sponsors"—Nike (among BMW, Hershey, Visa, Rosetta Stone, and the University of Phoenix)—provides a good or service that relates to sports in any way. Nike also sponsors individual track & field athletes in exchange for being featured on the athletes' competition apparel.

7.      Although USATF welcomes a wide range of sponsors for itself (which are featured at the Olympic Trials (including in television shots)), USATF and its co-conspirators severely restrict the type of *individual* sponsors that track & field athletes can display on their athletic apparel at the Olympic Trials, including their competition 'kit,' which greatly diminishes sponsorship opportunities for the athletes and excludes various would-be sponsors.

**Upcoming Olympic Trials**

8.      This is an Olympic Trials year, with the 2016 Olympic Team Trials for track & field to be held at Hayward Field in Eugene, Oregon (as in years past) on July 1-10, 2016. In order to qualify for the Olympic Trials, track & field athletes must be U.S. citizens and have a qualifying performance (as measured in time, distance, or points) at a meet or event in the previous year that satisfies USATF qualifying criteria. The subsequent 2016 Olympic Games— which do not involve USATF and are not the subject of this complaint—will be held in Rio de Janeiro, Brazil on August 5-21, 2016.

**Olympic Trials Uniform Advertising and Logo Regulations**

9.      USATF's 2016 Olympic Trials Uniform Advertising and Logo Regulations, which are available on USATF's web site and attached below as Exhibit 1, provide that, "[a]s required by the USOC . . . [w]ith the exception of standard manufacturers' equipment identification permitted by Rule 50 of the Olympic Charter (or the manufacturers' equipment

identification permitted by the NGB's International Federation's rules, if applicable), the equipment, uniforms and the bibs/numbers of the competitors and officials at the Trials may not bear any commercial identification or promotional material of any kind (whether commercial or noncommercial)."[1] Furthermore, "[a]ny violation of the rules may result in disqualification."[2]

10.     Notwithstanding its prohibition on "commercial identification" and "promotional material," the Regulations permit athletes to wear apparel at the Olympic Trials that feature the name and logo, subject to certain generally applicable size and quantity restrictions, of (1) a pre-approved "Manufacturer of the attire"—*e.g.,* Nike—or (2) a "standard" manufacturer of track & field equipment such as vaulting poles and javelins.[3] And, lest there be any doubt, USATF concedes that these "identification[s]" are "Advertising."[4] The resulting advertising exposure that apparel and equipment manufacturers enjoy at the Olympic Trials is enormously valuable to those companies.

11.     USATF's 2012 Olympic Trials Athlete Policy, which contains the same or similar restrictions, even provides visual examples of permissible advertising in the form of "manufacturer logos on vests and leotards:

---

[1] *2016 Olympic Trials Uniform Advertising and Logo Regulations*, http://www.usatf.org/usatf/files/e3/e3a293b1-f3d0-49c5-bc83-5ad245f49644.pdf (attached below as Exhibit 1), at 1.
[2] *Id*. As discussed in greater detail elsewhere in this complaint, Rule 50 of the Olympic Charter does not apply to or govern Olympic-qualifying events or other athletic events outside of the Olympic Games.
[3] *Id*.
[4] *Id*. at 2.

| ADIDAS | ASICS | MIZUNO | NIKE | PUMA | REEBOK |
|--------|-------|--------|------|------|--------|
| | | | | | |

."[5] "Examples of the permitted locations for manufacturer logos on vests and leotards include:



."[6]

At the 2012 Olympic Trials USATF also permitted:

A graphic or figurative logo of the manufacturer (not including name or any text) [to] be used as a decorative 'design mark' once or repeatedly as a strip not exceeding 10cm in width in one of the following positions, provided such use does not, in the opinion of USATF in its sole discretion, dominate or unduly detract from the appearance of the garment:

- Across the bottom of the sleeves;
- On the outer seam of the sleeves;
- Down the outer seams of the garment.[7]

---

[5] *Olympic Trials Athlete Policy*, http://www.usatf.org/Events-/-Calendar/2012/U-S--Olympic-Team-Trials-TF/Athlete-Info/Competition/Uniform-Policy.aspx.
[6] *Id*.
[7] *Id*.

"Examples of permitted decorative design mark[s] of the manufacturer, used as a strip, include, but are not limited to:



."8

The USATF document continues: "Examples of the permitted locations for design marks on vests and leotards include:

."9

12.    By jointly agreeing and conspiring to restrict and limit the "Advertising" that appears on athletes' bodies at the Olympic Trials to only pre-approved manufacturers of athletic apparel and equipment, defendants USATF and the USOC starve athletes of myriad sponsorship opportunities—and exclude scores of sponsors from the marketplace. USATF and the USOC do not act alone either; their unnamed co-conspirators—the apparel and equipment manufacturers that benefit from this practice and ensure its continuity—have likewise jointly agreed and conspired to (1) deny athletes the full spectrum of Olympic Trial sponsors and (2) reduce competition among competitors through this self-serving exclusion.

---

8 *Id.*
9 *Id.*

13.     This agreement and group boycott (jointly, "the restraint") is patently unlawful and should be preliminarily and permanently enjoined. The restraint is *per se* illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1. Furthermore, were it necessary, the restraint is also illegal under the Rule of Reason, whether under a "quick look" or a full Rule-of-Reason analysis, as it lacks any legitimate business justification or pro-competitive effect.

14.     As a result of the restraint, athletes competing at the Olympic Trials have received and/or will receive less revenue for their sponsorship than they would receive in a competitive market. Moreover, as a result of the restraint, Run Gum and other would-be sponsors have received and/or will receive less revenue (as well as less good will, less brand loyalty, and less consumer attention) because of their categorical and anticompetitive exclusion from the Olympic Trials.

**Run Gum**

15.     Founded by two-time Olympic runner Nick Symmonds and running coach Sam Lapray, Plaintiff Run Gum manufactures and sells compressed functional chewing gum that contains a proprietary mix of caffeine, taurine, and b vitamins. Popular among runners, Run Gum provides a zero-calorie alternative to coffee or energy drinks for athletes who want to optimize their performance without ingesting liquids.

16.     Run Gum markets its product—and supports athletes—by, among other activities, sponsoring an "Elite Team" of professional runners who promote Run Gum, including by competing in Run Gum-branded apparel. As a rapidly growing new business, Run Gum is prepared to sponsor track & field athletes at the upcoming Olympic Trials and gain exposure by being featured on the athletes' competition apparel. But USATF's 2016 Olympic Trials Uniform Advertising and Logo Regulations prevent that sponsorship with the threat of athlete

"disqualification" and the further warning that "[u]**niforms will be inspected during packet pick up at the Athlete Hospitality Lounge and during the final clerking process before competition to ensure compliance**."[10] Thus, Run Gum is excluded from the Olympic Trials, while Nike and other apparel and equipment manufacturers are not.

17.     Run Gum brings this action to preliminarily and permanently enjoin violations by each defendant of federal and state antitrust laws. An injunction is the only relief that can remedy these unlawful restrictions.

18.     Run Gum seeks only the same opportunities that Nike and other apparel and equipment manufacturers already enjoy.

## JURISDICTION AND VENUE

19.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust regulation), as this action arises under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26. The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), in that this is a civil action in which the matter or controversy exceeds the sum of $75,000, exclusive of interest and costs, and in which the Plaintiff and the Defendants are citizens of different states.

20.     This Court has personal jurisdiction over the defendants because, among other reasons, they (a) transact business throughout the United States, including in this District; (b) have participated in organizing and conducting the upcoming Olympic Trials, selling tickets, selling broadcast rights, and/or licensing or selling merchandise and services throughout the United States, including in this District (and continue to do so); (c) have substantial contacts with

---

[10] *Id*. at 4 (emphasis in original).

the United States, including in this District; (d) are engaged in an illegal anticompetitive scheme that is directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District; and (e) have committed overt acts in furtherance of their illegal agreement and conspiracy in the United States, including in this District (and continue to do so).

21.    Venue is proper in this District (Eugene Division) because each of the defendants operates, can be found, resides, has an agent, and/or transacts business in this District (and its Eugene Division) as provided in 28 U.S.C. § 1391(b) and (c) and in Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22. Moreover, the unlawful activities that give rise to Run Gum's claim here have been and will be carried out in substantial part by one or more of the defendants within this district (and within the Eugene Division, where divisional venue lies). The 2016 USATF Olympic Team Trials will occur on July 1-10, 2016 in Eugene, Oregon— "TrackTown, USA"—at Hayward Field, University of Oregon. Additionally, USATF and the USOC frequently conduct business in the District and have contracted for services within the district, including services related to the Olympic Trials. Finally, this District is home to Nike; numerous athletes expected to compete at the upcoming Olympic Trials; and Run Gum.

22.    Defendants and unnamed co-conspirators earn millions of dollars from television exposure (and television-broadcast agreements) at the Olympic Trials, and those telecasts are shot, generated, produced, and disseminated in part or in whole within this district (Eugene Division).

## THE PARTIES

23.     Plaintiff Run Gum is an assumed business name for Gold Medal LLC, a limited

liability company organized under the laws of the State of Oregon, with its principal place of

business at 6990 Chakarun Lane SE, Salem, Oregon 97306.

24.     Defendant USATF is a corporation organized under the laws of the State of

Virginia, with its principal place of business at 132 East Washington Street, Suite 800,

Indianapolis, Indiana 46204. USATF's 2013 annual report recorded $19,591,324 in revenues,

gains, and public support. USATF is engaged in interstate commerce through, among other

activities, its governance and supervision of the sport of track & field in the United States, as

well as its ownership (or co-ownership) and operation of the Olympic Trials.

25.     Defendant USOC is a federally chartered corporation, 36 U.S.C. § 220502(a),

registered in the State of Colorado, with its principal place of business at One Olympic Plaza,

Colorado Springs, Colorado 80909. Defendant USOC is not a state or federal actor, and federal

statute authorizes the USOC to "sue and be sued." 36 U.S.C. § 220505(b)(9). Defendant USOC

operates in all fifty states and the District of Columbia. USOC is engaged in interstate commerce

through, among other activities, (1) its training, entering, and funding of U.S. teams for the

Olympic Games; (2) its governance, supervision, and funding of Olympic national governing

bodies (such as USATF); (3) its role in overseeing the process by which U.S. cities bid to host

the Olympic Games; and (4) its role in approving the U.S. Olympic Trials sites and procedures

for the Olympic team selections.

## UNNAMED CO-CONSPIRATORS

26.     Various other persons, firms, corporations, and entities (including, but not limited

to, apparel and equipment manufacturers who are sponsoring individual athletes at the upcoming

Olympic Trials) have actively participated as unnamed co-conspirators with the defendants in the violations and conspiracy alleged in this complaint—and continue to do so. In engaging in the offenses charged and violations alleged in this complaint, these co-conspirators have performed overt acts and made statements in furtherance of the antitrust violations alleged here.

27.    At all relevant times, the defendants and each co-conspirator ratified and/or authorized the wrongful acts of the defendants and each of the other co-conspirators. The defendants and their co-conspirators, including each individually, are participants as aiders and abettors in the improper acts and transactions that are the subject of this action.

## NATURE OF INTERSTATE TRADE AND COMMERCE

28.    Defendants and their unnamed co-conspirators are engaged in the business of hosting, organizing, delegating, and sponsoring the Olympic Trials. Absent the anticompetitive restrictions at issue in this action, non-apparel and non-equipment sponsors including Run Gum would sponsor individual athletes at the Olympic Trials in exchange for exposure at the Olympic Trials, subject to the same generally applicable size, quantity, and placement restrictions that currently govern apparel and equipment manufacturer "Advertising." As a result, the number of individual athlete sponsorships would increase, as would their dollar value, which would benefit athletes, excluded sponsors, competition (by merging the excluded sponsors into the pool of eligible sponsors)—and the sport of track & field more broadly.

29.    The defendants and their unnamed co-conspirators' operation of and engagement in the respective businesses of hosting, organizing, delegating, and sponsoring the Olympic Trials (and to a limited extent, certain athletes at the Olympic Trials) involves a substantial volume of interstate trade and commerce, including the following interstate activities, among others: travel; communications; purchases and movement of equipment and apparel; broadcasts

of the Olympic Trials; promotions; advertisements; sales of tickets and concession items; sales of

merchandise and apparel; employment of administrators, executives, referees, and other

personnel; and negotiations for all of the foregoing.

30.     The defendants and their unnamed conspirators' interstate transactions involve

millions of dollars in collective expenditures and receipts.

31.     The anticompetitive restrictions at issue in this action have prevented Plaintiff

Run Gum from lawful business activities in interstate commerce, including sponsoring individual

out-of-state athletes at the upcoming Olympic Trials.

32.     The anticompetitive activities of Defendants that are the subject of this action

were within the flow of and substantially affected interstate trade and commerce.

## THE ILLEGAL AGREEMENT TO RESTRAIN COMPETITION

33.     Defendants' anticompetitive agreement (supported, advanced, jointly agreed to,

and faithfully obeyed by unnamed co-conspirators) is well-documented and beyond dispute.

USATF's web site clearly lays out the nature of the restriction over four pages

(http://www.usatf.org/usatf/files/e3/e3a293b1-f3d0-49c5-bc83-5ad245f49644.pdf).

34.     The 2016 Olympic Trials Uniform Advertising and Logo Regulations specify that

"[a]s a U.S. Olympic Committee event, the U.S. Olympic Team Trials – Marathon, Race Walk,

and Track & Field are subject to IOC and USOC advertising regulations for athletes' apparel and

uniforms."[11]

35.     "As required by the USOC," the Regulations state:

*With the exception of standard manufacturers' equipment identification permitted
by Rule 50 of the Olympic Charter (or the manufacturers' equipment*

---

[11] *2016 Olympic Trials Uniform Advertising and Logo Regulations*,
http://www.usatf.org/usatf/files/e3/e3a293b1-f3d0-49c5-bc83-5ad245f49644.pdf (attached below
as Exhibit 1), at 1.

*identification permitted by the NGB's International Federation's rules, if applicable), the equipment, uniforms and the bibs/numbers of the competitors and officials at the Trials may not bear any commercial identification or promotional material of any kind (whether commercial or noncommercial).*

*Competitor uniforms may bear the name of his or her track club, provided the club is a registered member and in good standing with USA Track & Field (as of November 1, 2015) and has been approved by the USOC.*

*Any violation of the rules may result in disqualification.*[12]

36.    "For the U.S. Olympic Team Trials – Marathon, Race Walk, and Track & Field, these rules are applied as follows," the Regulations continue, enumerating the size and quantity of permitted names and logos of apparel and equipment manufacturers that may appear on athletes' competition tops (vests/singlets), competition bottoms (shorts/half-tights), leotards (one piece speed suits, including upper body and lower body), tops, t-shirts, sweatshirts, rain jackets, and lower body attire at the upcoming Olympic Trials.[13]

37.    USATF also details the cartel's methods for enforcing the restraint. Athletes at the Olympic Trials face disqualification for any violation of the Regulations, which would necessarily prevent that individual from advancing to the 2016 Olympic Games, with attendant negative consequences for their sponsors.[14] USATF further warns that "[**u**]**niforms will be inspected during packet pick up at the Athlete Hospitality Lounge and during the final clerking process before competition to ensure compliance**."[15]

38.    This anticompetitive agreement has horizontal and vertical aspects. Insofar as it is an agreement between and among USOC, USATF, apparel manufacturers, and equipment manufacturers, it is a vertical restraint. Insofar as it is an agreement between and among apparel

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 4 (emphasis in original).

manufacturers and equipment manufacturers, it is also a horizontal restraint. The 2008, 2012, and

2016 USATF-issued guidelines explicitly confirm the agreement, at least as between USATF

and the USOC:

>    a.    <u>2008 Olympic Trials Competitor Clothing Policy</u>: "Per USATF's
>          ***agreement*** with the USOC, the athlete clothing policy for the Olympic
>          Team Trials will allow both club names and a manufacturer's name/logo
>          on an athlete's attire."[16]
>
>    b.    <u>2012 Olympic Trials Athlete Policy</u>: "Per USATF's ***agreement*** with the
>          USOC, the athlete clothing policy (hereinafter 'Guidelines') for the
>          Olympic Team Trials will allow both club names and a manufacturer's
>          name/logo on an athlete's attire."[17]
>
>    c.    The <u>2016 Olympic Trials Uniform Advertising and Logo Regulations</u>
>          echo the very same agreement but describe the anticompetitive restraint
>          "[a]s ***required*** by the USOC."[18]

      39.    USOC's active and longstanding participation in this agreement is demonstrated

further by a March 30, 2012 letter from Chester Wheeler, Director, NGB Marketing Programs

and Business Development, USOC, to USATF Interim CEO Mike McNees:

>    With the U.S. Olympic Trials Track & Field quickly approaching, we are asking
>    USA Track & Field to send an important reminder to athletes, agents, coaches and
>    staff regarding apparel and equipment identification during the event.
>
>    The athlete's body, uniforms (including headwear, shoes, singlets, shirts, shorts
>    and pants) and bib/numbers of the competitors and officials at the U.S. Olympic
>    Trials may not bear any commercial identification, sponsor recognition, or
>    promotional materials of any kind outside the standard manufacturer's logo for
>    clothing, as per the IAAF size regulations. . . .

---

[16] *Competitor Clothing Policy*, http://www.usatf.org/events/2008/OlympicTrials-
TF/athleteInfo/uniformPolicy.asp (emphasis added).

[17] *Olympic Trials Athlete Policy*, http://www.usatf.org/Events-/-Calendar/2012/U-S--Olympic-
Team-Trials-TF/Athlete-Info/Competition/Uniform-Policy.aspx (emphasis added).

[18] *2016 Olympic Trials Uniform Advertising and Logo Regulations*,
http://www.usatf.org/usatf/files/e3/e3a293b1-f3d0-49c5-bc83-5ad245f49644.pdf (attached below
as Exhibit 1), at 1.

The standard manufacturer's logo means the normal display of the name, designation, trademark, or logo or any other distinctive sign of the manufacturer of an item.

. . . .

Any violation of the rules may result in disqualification. We appreciate your attention and understanding to these rules that will be enforced throughout the 2012 U.S. Olympic Team Trials.

It is important for your athletes to understand that they cannot allow the use of their likeness related to their U.S. Olympic Trials or Olympic accomplishments with any company who is not a USOC partner. This would include any congratulatory ads or promotions by the athletes' sponsors.[19]

## **RELEVANT MARKET**

40.     The challenged conduct affects the market for sponsorship of individual athletes at the upcoming 2016 Olympic Trials in exchange for the display of the sponsors' name and/or logo on the competition tops (vests/singlets), competition bottoms (shorts/half-tights), leotards (one piece speed suits, including upper body and lower body), tops, t-shirts, sweatshirts, rain jackets, and lower body attire of those athletes at the Olympic Trials (the "individual-sponsorship market"). The individual-sponsorship market concerns the highest level of track & field competition in the United States, the apex of the sport in this country, which occurs only every four years. This market is distinct in that it offers a unique commercial opportunity for individual sponsors for which there is no reasonable substitute or alternative.

41.     The relevant geographic market consists of the entire United States and its territories.

---

[19] https://www.usatf.org/events/2012/OlympicTrials-TF/athleteInfo/Letter%20from%20USOC%20-%20advertising%20regs%20in%20Eugene.pdf, at 1.

42.    USATF and the USOC have the power to exclude certain individual sponsors from the Olympic Trials through their authority to disqualify athletes that do not comply with the 2016 Olympic Trials Uniform Advertising and Logo Regulations. Thus, USATF and the USOC possess and exercise absolute control over the individual-sponsorship market and are able to, and do, dictate the supply of individual sponsors, thereby artificially dampening the price for those individual sponsorships. Moreover, USATF, USOC, and their co-conspirators possess 100% market share of the individual-sponsorship market, from which all other would-be sponsors are excluded.

43.    Although the Olympic Trials are not the only opportunity for companies to sponsor individual track & field athletes in exchange for identification on the athlete's competition apparel, no other event provides a remotely comparable business and marketing opportunity for sponsors like Run Gum. And the absence of the same restrictions at other USATF events further underscores the lack of a legitimate business justification or pro-competitive effect for the restraint.

44.    Every year, USATF hosts, in conjunction with partner cities and event sponsors, an Indoor Championship Series and an Outdoor Championship Series, each consisting of a year-long series of events in various cities and culminating in a championship event, at which track & field athletes can qualify for the world championships and related events. For example, at the June 25-28, 2015 USATF Outdoor Championships, also held in Eugene, Oregon—and dubbed as the "the final stop on the 2015 Outdoor USATF Championship Series"—athletes competed for the opportunity to represent Team USA at the 2015 IAAF World Championships on August 22-30 in Beijing, China, as well as for positions on teams featured at the Pan Am Games, Thorpe Cup, Pan Am Juniors, and North America Central America Caribbean Association

Championships. Similarly, at the February 21-23, 2014 USA Indoor Track & Field Championships, athletes competed for the opportunity to represent Team USA at the IAAF World Indoor Championships in Sopot, Poland on March 7-9, 2014.

45.    At competitions in the USATF Indoor Championship Series and Outdoor Championship Series, track & field athletes are permitted to wear the names and logos of individual sponsors of their choice, without regard to the nature of the sponsor's business. The USATF Indoor Championship Series and Outdoor Championship Series are no substitute for the Olympic Trials, however; the in-person and television audiences vary greatly in demographics and are smaller in number, and the USATF Indoor Championship Series and Outdoor Championship Series offer none of the unique marketing possibilities and aura provided by the Olympic Trials—a hallowed opportunity to witness, every four years, who will go on to the Olympic Games to represent the United States.

46.    Thus, there is no reasonable alternative opportunity for individual-athlete sponsors who are excluded from the Olympic Trials to receive commensurate economic opportunities and benefits from another track & field event or series of track & field events. The value to sponsors of exposure at the U.S. Olympic Trials is unmatched.

47.    Nor do the indoor or outdoor *world* championship events, and related international Team USA events, provide a reasonable alternative opportunity for individual-athlete sponsors who are excluded from the Olympic Trials to receive commensurate economic opportunities and benefits. Team USA, and USATF in conjunction with Team USA, is sponsored exclusively by Nike—and Team USA athletes are compelled to wear Nike-branded competitive apparel at Team USA events. This *single*-sponsor exclusivity, which Plaintiff Run

Gum does not challenge here, stands in stark contrast to the categorical exclusion of individual-athlete sponsors *by business type* at the Olympic Trials.

### INJURY TO RUN GUM

48.      Athlete sponsorship is central to Run Gum's business model.  As an athlete-owned business that manufactures, markets, and sells a performance-enhancing product for athletes (and track & field athletes in particular), Run Gum prizes any opportunity to promote its product through top track & field athletes, including by paying athletes for Run Gum identification on their competition apparel.

49.      Although a fledgling business, Run Gum has sponsored over a dozen top track & field athletes to date. Run Gum plans to sponsor many more track & field athletes as its business grows.  Sponsorship of individual athletes at the upcoming Olympic Trials, and the identification of Run Gum on those individuals' competition apparel, is a significant component of Run Gum's business-growth strategy for 2016.

50.      Left unchecked, the restraint will prevent Run Gum from sponsoring individual athletes at the Olympic Trials and receiving the exposure that would result from those sponsorships. That unlawful exclusion will cause material economic losses for Run Gum, which will receive less revenue (as well as less good will, less brand loyalty, and less consumer attention) as a result of these anticompetitive practices.  Moreover, Run Gum's exclusion from the Olympic Trials makes it a less attractive sponsor overall to athletes who understandably prefer to partner with sponsors that are not excluded from this event.

### THE RESTRAINT HAS NO LEGITIMATE BUSINESS JUSTIFICATION OR PRO-COMPETITIVE EFFECTS

51.     The anticompetitive exclusion of Run Gum (and various other individual-athlete sponsors that do not manufacture equipment or apparel) from the Olympic Trials lacks any legitimate business justification or pro-competitive effects.

52.     Although the 2016 Olympic Trials Uniform Advertising and Logo Regulations suggest that the restraint is merely an extension of Rule 50 of the Olympic Charter—which states that "[n]o form of publicity or propaganda, commercial or otherwise, may appear on persons, on sportswear, accessories or, more generally, on any article of clothing or equipment whatsoever worn or used by all competitors, team officials, other team personnel and all other participants in ***the Olympic Games***, except for the identification . . . of the manufacturer of the article or equipment concerned, provided that such identification shall not be marked conspicuously for advertising purposes"[20]—Rule 50 actually has no application to Olympic-qualifying events (or other events outside of the Olympic Games), as evidenced by Olympic trials regulations in other sports and in other countries—and even the USOC's own statements.

53.     The Olympic Charter defines the Olympic Games, at which Rule 50 governs, as that term is colloquially used to refer to the sixteen days of international competition that occur every four years (in winter and summer sports, respectively):

> 1.     The Olympic Games are competitions between athletes in individual or team events and not between countries. They bring together the athletes selected by their respective [National Olympic Committees], whose entries have been accepted by the [International Olympic Committee]. They compete under the technical direction of the [International Federations] concerned.

> 2.     *The Olympic Games consist of the Games of the Olympiad and the Olympic Winter Games*. Only those sports which are practised on snow or ice are considered as winter sports.

---

[20] International Olympic Committee, *Olympic Charter*, http://www.olympic.org/Documents/olympic_charter_en.pdf, at 94 (Aug. 2, 2015).

Bye-law to Rule 6

1.    An Olympiad is a period of four consecutive calendar years, beginning on 1 January of the first year and ending on 31 December of the fourth year.

2.    The Olympiads are numbered consecutively from the first Games of the Olympiad celebrated in Athens in 1896. The XXIX Olympiad began on 1 January 2008.

3.    The Olympic Winter Games are numbered in the order in which they are held.[21]

54.    In the International Olympic Committee's (IOC) Guidelines Regarding Authorised Identifications, which USATF hosts on its web site and which "provide guidance on how Olympic Charter Rule 50 is to be implemented," the IOC again defines "Olympic Games" as that term is used in Rule 50: "'*Olympic Games*' *means the Games of the XXXI Olympiad, Rio 2016*."[22]

55.    In a 2014 IOC document entitled "Rule 50 of the Olympic Charter: What you need to know as an athlete" and concerning the Sochi 2014 Olympic Games, the IOC again confirms the limited applicability of Rule 50: "**When does Rule 50 apply and to whom does it apply?** Rule 50, *which is in place during Games time*, applies to all the athletes, officials and other people accredited within Olympic Games venues and sites."[23]

56.    The inapplicability of Rule 50—and the absence of any legitimate business justification or pro-competitive effects of the restraint—is further confirmed by

---

[21] *Id*. at 23 (emphasis added).

[22] International Olympic Committee, *Guidelines Regarding Authorised Identifications*, http://www.usatf.org/usatf/files/18/18566416-27be-46cc-bd09-f42bf38a1243.pdf, at 7 (July 2015) (emphasis added).

[23] *Rule 50 of the Olympic Charter: What you need to know as an athlete*, http://www.teamusa.org/~/media/USA_Bobsled_Skeleton/Documents/Rule%2040%2050/ 20131216%20%20Rule%2050%20%20Sochi%202014%20Olympic%20Games%20%20Athlete s%20QA%20%20EN.pdf, at 1 (italics added).

Olympic trials practice in other sports and other countries. For example, USA Wrestling, the national governing body for the sport of wrestling in the United States, directs in its Rule Book & Guide to Wrestling (2014 Edition), in language that quotes directly from United World Wrestling, the international governing body for the sport of wrestling: "Apart from *during the Olympic Games* where the IOC Rules apply, competitors can wear one or several sponsors' names. Contestants may also wear their sponsors' name(s) on the back or sleeves of their robes. Lettering and symbols may not be higher than 6 cm to identify the sponsor(s)."[24] Elsewhere in the same document, USA Wrestling confirms that this guidance also applies to Olympic Trials ("International competition, and USA Team Trials leading to World and Olympic competition, are conducted without modifications of the FILA [now United World Wrestling] rules, except those procedures adopted for ranking, pairing the contestants, protests, blood rules and weigh-ins.").[25]

57.     On information and belief, track & field national governing bodies in the European Union and elsewhere permit athletes to wear the logos of individual sponsors that do not manufacture apparel or equipment at their respective Olympic trials and/or at those competitions that determine Olympic eligibility, even if not identified as Olympic "trials."

58.     Any conceivable pro-competitive justifications for Olympic Rule 50 and its application at the upcoming 2016 Olympic Games have no bearing on this action, which alleges a specific restraint far afield of the Games of the XXXI Olympiad, Rio 2016 and well outside of

---

[24] USA Wrestling, *Rule Book & Guide to Wrestling*, http://content.themat.com/forms/Rulebook.pdf, at 10 (2014 edition) (emphasis added).
[25] *Id.* at 57.

the reach of Rule 50.  There are no pro-competitive justifications for the application of Olympic Rule 50 to the Olympic Trials.

## CAUSE OF ACTION – COUNT I

### Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1

59.    Plaintiff Run Gum repeats and re-alleges each of the allegations contained in the preceding paragraphs.

60.    The restraint agreed upon and imposed by Defendants, which limits individual sponsorship at the Olympic Trials to apparel and equipment manufacturers, is an anticompetitive horizontal and vertical agreement among competitors to fix artificially—and unlawfully—the number of individual sponsors and the price paid to athletes for individual sponsorship. The restraint is also an unlawful group boycott of individual sponsors that do not manufacturer apparel or equipment, which are categorically excluded from sponsoring athletes at the Olympic Trials.

61.    The restraint constitutes a perpetual price-fixing agreement with horizontal and vertical features and a group boycott, both of which are unlawful *per se*.

62.    The foreclosure is also an unreasonable restraint of trade under the Rule of Reason, whether under a "quick look" or a full Rule of Reason analysis. Defendants USOC and USATF possess substantial market power in the relevant individual-sponsorship market.

63.    Defendants' price-fixing agreement and group boycott is a naked restraint of trade that lacks any pro-competitive purpose, justification, or effects. There are less restrictive rules and regulations that are virtually as effective at achieving any purported pro-competitive effects and do not significantly increase costs.

64.     Defendants USATF and USOC are active participants and co-conspirators in this unlawful contract, combination, or conspiracy.

65.     As a direct and proximate result of Defendants' violation of Section 1 of the Sherman Act, Plaintiff Run Gum has suffered and/or will suffer injury to its business and property so long as this unlawful contract, combination, or conspiracy continues.

66.     Monetary damages cannot adequately compensate Run Gum for the irreparable harm it has suffered and/or will suffer, which necessitates preliminary and permanent injunctive relief.

67.     The conduct of the Defendants threatens monetary injury to Run Gum, which would also entitle it to damages.

## **PRAYER FOR RELIEF**

Plaintiff Run Gum prays for judgment as follows:

68.     Declaring that the defendants' rules, regulations, and agreements that prohibit, cap, or otherwise limit the type of individual sponsors that athletes can display on their competition tops (vests/singlets), competition bottoms (shorts/half-tights), leotards (one piece speed suits, including upper body and lower body), tops, t-shirts, sweatshirts, rain jackets, and lower body attire at the upcoming 2016 Olympic Trials violate Section 1 of the Sherman Act and Or. Rev. Stat. § 646.725 and enjoining those rules, regulations, and agreements as they apply to Run Gum;

69.     Enjoining the defendants from preventing Run Gum from sponsoring individual athletes at the 2016 Olympic Trials in exchange for sponsor identification on clothing at the Olympic Trials, subject to the same generally applicable size, quantity, and placement restrictions that currently govern apparel and equipment manufacturer "Advertising";

70.     Awarding Plaintiff Run Gum triple, or treble, the amount of individual damages it has sustained or sustains as a result of the violations of antitrust law alleged herein;

71.     Awarding Plaintiff Run Gum its costs, expenses, and reasonable attorneys' fees in this action;

72.     Awarding Plaintiff Run Gum any available pre-judgment and post-judgment interest; and

73.     Granting Plaintiff Run Gum such further and other relief as may be appropriate.


## DEMAND FOR JURY TRIAL

74.     Plaintiff Run Gum demands a jury trial, as contemplated by Federal Rule of Civil Procedure 38(b), of all triable issues.

Dated: January 20, 2016

<div style="margin-left: 40%;">

_s/ Timothy P. Landis_
Timothy P. Landis, OSB No. 92617
TIMOTHY LANDIS, P.C.
One S.W. Columbia Street
Suite 1110
Portland, Oregon 97258
Tel: (503) 220-1331
Fax: (503) 227-7829
Email: tim@tlandislaw.com

Michael D. Hausfeld
Sathya S. Gosselin
Swathi Bojedla
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
Email: mhausfeld@hausfeld.com
sgosselin@hausfeld.com
sbojedla@hausfeld.com

</div>

Michael P. Lehmann
Bonny E. Sweeney
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
Email: mlehmann@hausfeld.com
bsweeney@hausfeld.com

*Counsel for Plaintiff Gold Medal LLC d/b/a Run Gum*