**Bruce L. Campbell, P.C.,** OSB No. 925377
bruce.campbell@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204-3699
Telephone: (503) 224-5858
Facsimile:  (503) 224-0155

**Derek Ludwin (*admitted pro hac vice*)**
dludwin@cov.com
**Alexander E. Ramey (*admitted pro hac vice*)**
aramey@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. NW
Washington, D.C. 20001
Telephone: (202) 662-5429
Facsimile:    (202) 778-5429

Attorneys for Defendant
United States Olympic Committee

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| GOLD MEDAL LLC d/b/a RUN GUM, | No. 6:16-cv-00092-MC |
| Plaintiff, | DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT |
| v. | (Pursuant to Fed R Civ P 12(b)(6)) |
| USA TRACK & FIELD and UNITED STATES OLYMPIC COMMITTEE, | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Page i -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
            in Support

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

LOCAL RULE 7-1 CERTIFICATION ........................................................................... 1

LOCAL RULE 7-2 CERTIFICATION ........................................................................... 1

THE USOC'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) ..................... 1

MEMORANDUM OF LAW IN SUPPORT OF THE USOC'S MOTION TO DISMISS ........... 1

   I.   The Ted Stevens Olympic and Amateur Sports Act Immunizes the Challenged
       USOC Rule. ........................................................................................................ 2

   II.   The Complaint Fails To State A Claim Under the Antitrust Laws. ................. 7

     A.   Run Gum Has Not Alleged a Plausible Agreement in Restraint of Trade. ................. 7

     B.   Run Gum Has Not Alleged a Plausible Relevant Market. ........................... 9

     C.   Run Gum Has Not Alleged a *Per Se* Violation of the Antitrust Laws. ..................... 14

CONCLUSION ............................................................................................................. 16

CERTIFICATE OF SERVICE .....................................................................................A

70082138.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Nat'l Collegiate Athletic Ass'n,*
    64 F. Supp. 2d 1097 (D. Kan. 1999) .........................................................11, 12, 13

*Am. Airlines v. Christensen,*
    967 F.2d 410 (10th Cir. 1992) ................................................................................8

*Apple, Inc. v. Psystar Corp.,*
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...........................................................10, 13

*Behagen v. Amateur Basketball Ass'n of the United States,*
    884 F.2d 524 (10th Cir. 1989) ..........................................................................5, 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................2, 7, 15

*Beutler Sheetmetal Works v. McMorgan & Co.,*
    616 F. Supp. 453 (N.D. Cal. 1985) .........................................................................8

*Blizzard Ent., Inc. v. Ceiling Fan Software LLC,*
    941 F. Supp. 2d 1227 (C.D. Cal. 2013) .................................................................10

*Bushie v. Stenocord Corp.,*
    460 F.2d 116 (9th Cir. 1972) ...............................................................................10

*Cal. Dental Ass'n v. FTC,*
    526 U.S. 756 (1999) ............................................................................................14

*Colonial Med. Grp., Inc. v. Catholic Health Care W.,*
    444 F. App'x 937 (9th Cir. 2011) ......................................................................9, 10

*Dimidowich v. Bell & Howell,*
    803 F.2d 1473 (9th Cir. 1986) *opinion modified on denial of reh'g*, 810 F.2d
    1517 (9th Cir. 1987)............................................................................................14

*Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc.,*
    213 F.3d 198 (5th Cir. 2000) .................................................................................5

*Hicks v. PGA Tour, Inc.,*
    No. 15-CV-00489-VC, Dkt. No. 106 (N.D. Cal. Feb. 9, 2016)..............................11, 12, 13

Page iii -   Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
              in Support

70082138.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Int'l Healthcare Mgmt. v. Haw. Coal. for Health*,
    332 F.3d 600 (9th Cir. 2003) ............................................................14

*JES Properties, Inc. v. USA Equestrian, Inc.*,
    458 F.3d 1224 (11 Cir. 2006)........................................................5, 6

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .....................................................7, 14

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ...................................................14, 16

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)..........................................................................8

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) .........................................................14

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*,
    468 U.S. 85 (1984)..........................................................................14

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) .....................................................9, 10

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998)........................................................................15

*Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*,
    87 F. Supp. 3d 874, 886 (N.D. Ill. 2015) ...................................12, 13

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
    786 F. Supp. 2d 1190 (S.D. Tex. 2009) .............................................8

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987)..........................................................................3

*Spinelli v. Nat'l Football League*,
    2015 WL 1433370 (S.D.N.Y. Mar. 27, 2015) .........................10, 11, 13

*Tanaka v. Univ. of S. Cal.*,
    252 F.3d 1059 (9th Cir. 2001) .............................................9, 11, 13, 14

*Toscano v. Prof'l Golfers Ass'n*,
    258 F.3d 978 (9th Cir. 2001) .....................................................7, 8, 9

Page iv -  Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
            in Support

70082138.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
    679 F. Supp. 2d 1120 (C.D. Cal. 2009) ...........................................................................5

*U.S. Olympic Comm. v. Intelicense Corp., S.A.*,
    737 F.2d 263 (2d Cir. 1984)..............................................................................3, 5, 6

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) ...........................................................................7, 15

**Statutes**

36 U.S.C. § 220503(3)(A)...............................................................................................3, 8

36 U.S.C. § 220505(c)(3)...............................................................................................3, 4, 8

36 U.S.C. § 220505(c)(4)...............................................................................................4

36 U.S.C. § 220506(a)(2)-(4).........................................................................................3

36 U.S.C. § 220521(a)....................................................................................................4

36 U.S.C. § 220523(a)(5), (a)(6)....................................................................................4


**Other Authorities**

LR 7-2(b) .......................................................................................................................1

Fed. R. of Civ. P. 12(b)(6) .......................................................................................1, 10

Page v -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
        in Support

70082138.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

## LOCAL RULE 7-1 CERTIFICATION

Counsel for defendant the United States Olympic Committee, Covington & Burling LLP and Miller Nash Graham & Dunn LLP, conferred with counsel for plaintiff about the dispute through a telephone conference, but the parties have been unable to resolve the dispute.

## LOCAL RULE 7-2 CERTIFICATION

This memorandum complies with the requirements of LR 7-2(b).

## THE USOC'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

In accordance with Fed. R. Civ. P. 12(b)(6), the USOC moves to dismiss the complaint because it fails to state a claim on which relief can be granted.

## MEMORANDUM OF LAW IN SUPPORT OF THE USOC'S MOTION TO DISMISS

The United States Olympic Committee exists to help U.S. athletes achieve sustained competitive excellence at the Olympic and Paralympic Games. To fund that mission, the USOC has long had exclusive authority and responsibility to use the Olympic brand to generate sponsorship and other financial revenues. Without regard to the USOC's obligation to protect the Olympic brand for the benefit of all U.S. athletes, Run Gum—a manufacturer of chewing gum— seeks to insert its product advertisements onto the field of competition and into the live telecasts of the 2016 Olympic Trials. Run Gum asserts that it seeks this advertising "opportunity" to secure the significant value of associating its products with the Olympic brand. In other words, Run Gum seeks to free ride on the USOC's activities and to appropriate for its own commercial purposes the brand, goodwill, and popular audience of the Olympic Trials. That effort lacks any legal support, and it threatens the ability of the USOC to deliver on its mission.

At its heart, the complaint challenges the United States Olympic Committee's control over the Olympic brand in the United States—the fundamental statutory right granted by Congress to allow the USOC to fulfill its mission and honor its responsibilities to American athletes. Run Gum seeks to overturn the USOC's decision to prohibit athletes competing at the

Page 1 -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

Olympic Trials from displaying any third-party commercial brands (other than standard manufacturers' equipment identification and local club marks) on their competition attire. But that USOC requirement, imposed on USA Track & Field as a condition of its production of the Olympic Trials, is protected by long-recognized principles of implied immunity: The Ted Stevens Olympic and Amateur Sports Act grants the USOC exclusive control over the Olympic brand in the United States precisely so that the USOC can generate funds to support U.S. Olympic athletes. The rule challenged in the complaint was implemented in exercise of that statutory authority, is necessary to the USOC's activities, and lies beyond the reach of the antitrust laws.

Even without statutory protection, nothing in the federal antitrust laws provides a basis for the complaint. In particular, the complaint fails to meet two of the fundamental prongs of an antitrust claim: It does not properly allege an agreement in restraint of trade; and it does not allege a plausible "relevant market" in which to evaluate the alleged effects of the challenged activities. The impossibly narrow, single-event alleged "relevant market" in the complaint—a particular type of advertising (a third-party logo on an athlete's attire) at one particular location (the field of competition) during one particular event (the 2016 Track & Field Olympic Trials)— is at odds both with common sense and with Run Gum's own descriptions of the other advertising opportunities that it enjoys.

Finally, the offhand allegations that Run Gum was subject to a *per se* unlawful "boycott" by a group of unnamed apparel manufacturers cannot save the complaint. Run Gum fails to allege even the most rudimentary facts about the alleged conspiracy, and fails the Supreme Court's *Twombly* standard for pleading a plausible claim.

## I.     The Ted Stevens Olympic and Amateur Sports Act Immunizes the Challenged USOC Rule.

In the Amateur Sports Act of 1978—revised in 1998 as the Ted Stevens Olympic and Amateur Sports Act (the "ASA")—Congress granted the United States Olympic Committee

Page 2 -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

("USOC") "exclusive jurisdiction, directly or through constituent members or committees, over . . . all matters pertaining to United States participation in the Olympic Games . . ." 36 U.S.C. § 220503(3)(A) (2012). As part of that authority, the ASA directs the USOC to "organize, finance, and control the representation of the United States in the competitions and events of the Olympic Games, . . . and obtain, directly or by delegation to the appropriate national governing body, amateur representation for those games." 36 U.S.C. § 220505(c)(3).

Although Congress charged the USOC with the responsibility to finance the U.S. participation in the Olympics, the USOC does not receive financial assistance from the United States Government. *See U.S. Olympic Comm. v. Intelicense Corp., S.A.*, 737 F.2d 263, 266 (2d Cir. 1984) ("the USOC is the *only* NOC [National Olympic Committee] that does not receive formal financial assistance from the Government" (emphasis added)). Instead, Congress granted the USOC the exclusive U.S. rights to the Olympic Rings, the emblem of the United States Olympic Committee, and the words "Olympic" or "Olympiad" in any combination. 36 U.S.C. § 220506(a)(2)-(4).

As the Supreme Court has explained, the unambiguous intent of Congress in granting the USOC exclusivity over the Olympic brand was to generate revenue to finance the United States involvement in the Olympic Games. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987). Section 220506(a) of the ASA "directly advances" Congress's interest in "promoting, through the activities of the USOC, the participation of amateur athletes from the United States" in the Olympic Games "by supplying the USOC with the means to raise money to support the Olympics and encourages the USOC's activities by ensuring that it will receive the benefits of its efforts." *San Francisco Arts*, 483 U.S. at 538-39[1]; *see also Intelicense Corp.,* 737 F.2d at 266 ("financing the United States Olympic team poses unique obstacles" and "[c]onsequently, the marketing of the Olympic symbol in the United States assumes great

---

[1] The Supreme Court referenced the 1978 version of the Amateur Sports Act, which is identical in relevant part to the revised statute.

Page 3 -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

importance"; "[p]rotecting the value of the Olympic symbol was, therefore, a significant factor that led to passage of the [ASA]" (citing 124 Cong. Rec. H10,754 (daily ed. Sept. 26, 1978) (remarks of Rep. Danielson)).

Under the ASA, the power and duty to obtain U.S. representation for the Olympic Games fall squarely on the USOC. 36 U.S.C. § 220505(c)(3). The USOC is empowered to designate a "National Governing Body" ("NGB") for each sport, which may then (a) "conduct amateur athletic competition, including national championships," (b) "establish procedures for determining eligibility standards for participation in competition," and (c) "recommend individuals" to participate in the Olympics as part of Team USA. *Id.* at §§ 220523(a)(5), (a)(6). These responsibilities pass to NGBs like USA Track & Field ("USATF") only by explicit authority from the USOC. *Id.* at § 220505(c)(4). Here, the USOC designated USATF as the NGB for track and field, and granted USATF the authority to host an "Olympic Trials" event to obtain athlete representation for the Olympic Games. Compl. ¶ 25; *see* 36 U.S.C. § 220521(a).

As a condition for branding its event the "2016 Olympic Trials," the USOC required USATF to conduct the event subject to conditions protecting the USOC's prerogatives under the ASA. Specifically, and as alleged in the complaint, the USOC required USATF to implement the following regulation:

> With the exception of standard manufacturers' equipment identification permitted by Rule 50 of the Olympic Charter . . . , the equipment, uniforms and the bibs/numbers of the competitors and officials at the Trials may not bear any commercial identification or promotional material of any kind (whether commercial or noncommercial).

Compl. Ex. 1, at 2, ¶ 35. Run Gum challenges this regulation to the extent that it precludes a third-party such as Run Gum from placing its advertising on athletes' attire during the Olympic Trials competition.

Run Gum's challenge is fatally flawed. That is because the Ted Stevens Olympic and Amateur Sports Act affords implied immunity from antitrust challenges that would "unduly

Page 4 -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

interfere" with the "operation" of the statute. *JES Properties, Inc. v. USA Equestrian, Inc.*, 458 F.3d 1224, 1231 (11th Cir. 2006) (citing *Gordon v. N.Y. Stock Exch.*, 422 U.S. 659, 686 (1975)); *accord Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc.*, 213 F.3d 198, 204-05 (5th Cir. 2000); *Behagen v. Amateur Basketball Ass'n of the United States*, 884 F.2d 524, 530 (10th Cir. 1989). "Although the Amateur Sports Act does not contain an explicit statement exempting action taken under its direction from federal antitrust laws, . . . the directives of the Act make the intent of Congress sufficiently clear" that it does create such an exemption. *Behagen*, 884 F.2d at 529.

Courts have interpreted the ASA to immunize regulations "necessary to implement the clear intent of Congress." *Id.* at 530. "[I]t is clear that the Congressional intent in enacting [the ASA] was to promote the United States Olympic effort by entrusting the USOC with unfettered control over the commercial use of Olympic-related designations" to "facilitate the USOC's ability to raise those financial resources from the private sector that are needed to fund the United States Olympic Movement." *Intelicense Corp.*, 737 F.2d at 266. Run Gum's challenge to the USOC's control over the Olympic brand conflicts directly with the ASA's provisions and recognized statutory purpose. *See JES Properties*, 458 F.3d at 1231 (rule prohibiting competitions within 250 miles on the same day fell within "control" granted by Congress to NGB); s*ee also TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 679 F. Supp. 2d 1120, 1133 (C.D. Cal. 2009) (noting "persuasive authority" that "the ability to offer exclusive rights to corporate sponsors is fundamental to the Olympic movement").[2]

---

[2] The *TYR* court concluded that, in contrast to the provision at issue here, an agreement between USA Swimming (an NGB) and Speedo, a private actor, did "not involve the promulgation of a rule, but rather a pattern of commercial conduct aimed at selling products for a corporate sponsor." 679 F. Supp. 2d at 1135. The plaintiff in *TYR* was found not to be challenging USA Swimming's model of exclusive sponsorship "*per se*," but rather the aspects of a particular sponsorship which had USA Swimming itself act "as a promoter" and sales agent for Speedo — including by hiring a Speedo-affiliated coach for the U.S. Team and by, through the coach, "mak[ing] false statements" to athletes on Speedo's behalf. *Id.* at 1134.

Page 5 -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
             in Support

70082138.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

The complaint seeks to invalidate and enjoin the USOC "rules, regulations, and agreements" that require USATF to enforce competition attire restrictions at the Olympic Trials. Run Gum seeks to capitalize on "the unique marketing possibilities and aura provided by the Olympic Trials"—an event that it describes as "a hallowed opportunity to witness, every four years, who will go on to the Olympic Games to represent the United States" (Compl. ¶ 45)—by undermining the process through which USOC generates revenues to support U.S. athletes. In so doing, Run Gum seeks to use the antitrust laws to frustrate the purpose of Congress.

Simply put, "if the USOC could not grant exclusive rights to market the Olympic symbol, the number of corporate participants would be greatly reduced and the USOC would find itself unable to raise the funds required for participation in the Olympic Movement." *Intelicense Corp.*, 737 F.2d at 266 (collecting cases for the proposition that one purpose of ASA was "to insure the market value of licenses"). A free-for-all system in which any company could associate its marks with the Olympic brand would necessarily dilute the value of USOC sponsorships. That would undercut the mechanism Congress intended to finance the Olympic Movement in the United States, and lead directly to less funding for the U.S. athletes participating in the Olympic and Paralympic movement.

In considering antitrust challenges to rules promulgated under the ASA, courts have not been willing to "substitute [their] own judgment for that of the [USOC or NGB] regarding the optimum way to fulfill its obligations;" nor have they "otherwise examine[d] the wisdom of the rule." *JES Properties*, 458 F.3d at 1232 (citing *Behagen*, 84 F.2d at 524-30); *see also id.* (citing *Gordon*, 422 at 688) (the "wisdom of [the rule] becomes relevant only when it is determined that there is no antitrust immunity"). Without restrictions on the type of third-party advertising sought by Run Gum, commercial brands would—as Run Gum openly seeks to do—free ride on the Olympic brand, thereby diluting the USOC's congressionally-granted exclusivity and undermining its ability to deliver on its mission. Run Gum's claims run directly afoul of the implied immunity granted to the USOC's regulations, and the complaint should be dismissed for

Page 6 -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
             in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

that reason alone.

## II.     The Complaint Fails To State A Claim Under the Antitrust Laws.

Even absent immunity, the complaint should be dismissed because it fails to state a claim under the antitrust laws. "On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). That in turn requires the plaintiff to plead "not just ultimate facts . . . but evidentiary facts." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Further, recognizing "the unusually high cost of discovery in antitrust cases," the Supreme Court has directed district courts to apply pleading requirements rigorously in order to avoid the time and cost associated with litigating "largely groundless claim[s]." *Twombly*, 550 U.S. at 558-59; see *Kendall*, 518 F.3d at 1047 ("discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case"). Run Gum's claims are neither plausible nor grounded in evidentiary facts.

### A.     Run Gum Has Not Alleged a Plausible Agreement in Restraint of Trade.

The threshold requirement for a claim under Section 1 of the antitrust laws is "concerted action of more than a single entity," *i.e.*, an *agreement* in restraint of trade. *Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001) (citation omitted). The complaint asserts that the USOC established regulations governing athletic attire, which it *required* USATF to enforce as a condition of its production of the Olympic Trials. Compl. ¶ 38; *see also, e.g., id.* at ¶ 60 (challenging "restraint agreed upon and imposed by [USOC and USATF]"). Such unilateral action by the USOC exercising control over its own product—Olympic-branded sporting events—cannot form the basis of a Section 1 conspiracy.

As set out above, the ASA provides the USOC with exclusive jurisdiction over "all

Page 7 -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

matters pertaining to United States participation in the Olympic Games . . . including representation of the United States in the games." 36 U.S.C. § 220503(3)(A) (2012). That includes full control over events, like the Olympic Trials, that are designed to "obtain . . . amateur representation for those games." *Id.* at § 220505(c)(3). USATF possesses the authority as an NGB to host events obtaining representation for the Olympics only by "delegation" from the USOC. *Ibid.* In order to make use of the Olympic marks to brand such an event the "Olympic Trials" for the sports of track and field, USATF is further obligated to accept the USOC's rules. Compl. ¶ 38.

Where, as here, USATF "merely agreed to purchase products or provide a service under conditions set by the other party . . .[t]he defendants did not make a 'conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Toscano*, 258 F.3d at 984 (citing *Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 764 (1984). "A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently . . . . And a distributor is free to acquiesce in the manufacturer's demand in order to avoid termination." *Monsanto Co.* 465 U.S. at 761 (citations omitted)); *see also Am. Airlines v. Christensen*, 967 F.2d 410, 413-14 (10th Cir. 1992) (no conspiracy where airline independently set the terms of its travel awards program and members merely accepted those terms); *Beutler Sheetmetal Works v. McMorgan & Co.*, 616 F. Supp. 453, 456 (N.D. Cal. 1985) (no conspiracy where investment company unilaterally established its "union-only" investment policy and real estate developers and mortgage lenders acquiesced in that policy); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1190, 1199 (S.D. Tex. 2009) ("the fact that a person accepts the terms of a contract does not, without more, generate the type of concerted action necessary to violate Section 1").

In *Toscano*, the Ninth Circuit held that a PGA Tour tournament sponsor did not engage in concerted action for Section 1 purposes when it entered into a contract "to organize and conduct the tournament in accordance with PGA Rules and Regulations.'" 258 F.3d at 982. Plaintiff

Page 8 -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
             in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

challenged some of the PGA's rules and regulations implemented at tour events by the tournament sponsors. *Id.* at 983. The appellate court rejected that challenge, holding that the tournament sponsors' promise to abide by the PGA's restrictions "show[ed] only that the local sponsors accepted the fact that the tournaments would be operated according to the PGA Tour's rules and regulations, not that they agreed to use those rules to restrain trade. . . ." *Id.* at 984; *see also id.* at 985 (contracts between the PGA and the tournaments sponsors were "agreements" but not "evidence of an agreement for concerted action in restraint of trade").

The appellate court's ruling in *Toscano* is dispositive here. The complaint identifies USATF's acceptance of the USOC's apparel rule as the allegedly anticompetitive "agreement." Compl. Ex. 1, ¶ 33. It also alleges, however, that USATF abides by the regulation because it is "*required* by the USOC" to do so. *Id.* ¶ 38 (emphasis added); *id.* at Ex. 1 ("As a U.S. Olympic Committee event, the U.S. Olympic Team Trials—Marathon, Race Walk, and Track & Field are subject to IOC and USOC advertising regulations for athletes' apparel and uniforms."); *see also id.* at ¶ 39 (USOC demand that USATF remind athletes of the "rules that will be enforced throughout the 2012 U.S. Olympic Team Trials). Because the complaint establishes that the USOC set the rules and regulations and that USATF accepted those rules and regulations as a condition for hosting the Olympic Trials, Run Gum does not adequately allege a Section 1 conspiracy and the complaint should be dismissed on this independent basis alone.

## B.   Run Gum Has Not Alleged a Plausible Relevant Market.

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'" *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008). A properly defined relevant market "includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Colonial Med. Grp., Inc. v. Catholic Health Care W.*, 444 F. App'x 937, 938 (9th Cir. 2011) (citation omitted). "Failure to identify a relevant market is a proper ground for dismissing a

Page 9 -   Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Sherman Act claim." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001); *accord Newcal Indus.*, 513 F.3d 1038 at 1045 ("a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable."); *Colonial Med. Grp.*, 444 F. App'x at 938 (affirming dismissal because proposed market definition was "underinclusive" and failed to "encompass the product at issue as well as all economic substitutes for the product" (citation omitted)).

The complaint alleges a relevant market for "sponsoring individual athletes at the upcoming July 1-10, 2016 U.S. Olympic Track & Field Team Trials in Eugene, Oregon ('the Olympic Trials'), in exchange for sponsor identification on the athletes' competition apparel." Compl. ¶ 1. That putative market is limited to (i) sponsorship of (ii) athletes in a single sport at (iii) a single sporting event, in exchange for (iv) a single type of advertising (a third-party logo placed on an athlete's apparel) in (v) a single location (the field of competition). In short, Run Gum seeks to place its logo into the field of competition during the telecast of USATF's Olympic Trials and defines the relevant market as that "unique" advertising opportunity.

When plaintiffs do not "allege facts plausibly supporting the counterintuitive claim that [a product] is so unique that it suffers no actual or potential competitors," then, "[e]ven where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) (citation omitted). That is because "a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product." *Ibid. accord Bushie v. Stenocord Corp.*, 460 F.2d 116, 120 (9th Cir. 1972); *Blizzard Ent., Inc. v. Ceiling Fan Software LLC*, 941 F. Supp. 2d 1227, 1234 n.6 (C.D. Cal. 2013). To do so "would as an analytic matter read the market definition step out of the Sherman Act." *Spinelli v. Nat'l Football League*, 2015 WL 1433370, at *21 (S.D.N.Y. Mar. 27, 2015) (quotations and alterations omitted).

In an opinion issued earlier this month, a district court within this circuit explained in detail why a relevant market limited to apparel worn during the telecast of a particular athletic

Page 10 -   Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

competition was improper as a matter of law. *Hicks v. PGA Tour, Inc.*, No. 15-CV-00489-VC, Dkt. No. 106 (N.D. Cal. Feb. 9, 2016). The plaintiffs in *Hicks*, caddies on the PGA Tour, challenged the Tour's regulations prohibiting advertising on the caddies' bibs while on the golf course during the televised competition. *Id.* at *1. Like Run Gum, the caddies sought to circumvent the control exercised by the PGA over the advertising visible to fans (at the venue and in the television audience) during the competition. And again like Run Gum, the caddies proposed relevant markets limited to the particular venue in which they wished to solicit advertising revenues: the market for "the endorsement of products and services by participants in professional golf tournaments," and the market for "in-play or in-action commercial advertising at professional golf events between commercial breaks." *Id.* *11-12.

The *Hicks* court resoundingly rejected these market definitions, finding them "artificial" and "contorted to meet [plaintiffs'] litigation needs." *Id.* *14. Specifically, the district court held that the caddies' allegations—"that advertising in the 'Endorsement Market' and the 'Live Action Advertising Market' is meaningfully distinct from other forms of advertising to golf fans—[we]re not plausible." *Id.* at 12-13. Instead, the district court noted, as a matter of law and common sense, that companies seeking to advertise to "fans of pro golf can do so in a variety of ways: television ads, magazine ads, internet ads, posters at golf course clubhouses, and more." *Id.* at *13. "[I]t's not enough to allege that these forms of advertising have differences. . . .To implicate the antitrust laws, the caddies must allege facts from which one could plausibly conclude that these different methods of advertising to golf fans are not reasonably interchangeable . . . ." *Ibid.*

*Hicks* is just the latest in a line of cases rejecting similarly narrow proposed relevant markets. District courts have rejected relevant markets limited to "NCAA promotional rights on athletic apparel used in intercollegiate competition," *Adidas Am., Inc. v. Nat'l Collegiate Athletic Ass'n*, 64 F. Supp. 2d 1097, 1103 (D. Kan. 1999); the "UCLA women's soccer program," *Tanaka*, 252 F.3d at 1063; photographs of NFL games, *Spinelli*, 2015 WL 1433370, at *21; and

Page 11 -   Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
            in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

"watching Live Cubs Games, [*i.e.,*] consumers who pay money to watch live-action Cubs Games, in person, as the games take place on the field at Wrigley Field," *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 886 (N.D. Ill. 2015).

The district court in *Adidas America, Inc. v. NCAA*, for example, rejected on the pleadings a proposed market limited to advertising on uniforms and equipment during NCAA competitions. *See* 64 F. Supp. 2d at 1103. Adidas had not adequately explained "why other similar forms of advertising, namely sponsorship agreements with teams or individuals competing in the National Football League, the National Basketball Association, the Women's National Basketball Association, Major League Baseball, Major League Soccer, or the Olympics, are not reasonably interchangeable with NCAA promotion rights or sponsorship agreements." *Ibid*.

Contrary to all of these precedents, the complaint alleges no *facts* demonstrating, or even suggesting, that no other form of advertising for Run Gum's products would be a *reasonable* substitute for appearing on athletes' competition apparel at one quadrennial Olympic event in Eugene, Oregon. To the contrary, and in addition to the many obvious examples emphasized by the *Hicks* and *Adidas* courts, the complaint alleges that Run Gum has access to *numerous* other advertising opportunities:

1. The complaint alleges that "[e]very year, USATF hosts, in conjunction with partner cities and event sponsors, an Indoor Championship Series and an Outdoor Championship Series" and that "[a]t competitions in the USATF Indoor Championship Series and Outdoor Championship Series, track & field athletes *are permitted to wear the names and logos of individual sponsors of their choice*, without regard to the nature of the sponsor's business." Compl. ¶¶ 44, 45 (emphasis added).

2. The complaint alleges that there are opportunities to obtain single-sponsor exclusivity of Team USA [sic] at the track and field indoor and outdoor World Championships, but fails to include such sponsorship opportunities in the relevant market. Compl. ¶ 47.

Page 12 -  Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

3.    The complaint alleges that the Olympic trials can be watched on "the nationwide broadcast" of NBC and on "digital streaming services," but does not distinguish the television and streaming advertising opportunities from those it includes in the relevant market. ¶ 4.

These alternatives conclusively undermine the proposed market definition.

Finally, the complaint does not *plausibly* alleged facts "supporting the counterintuitive claim" that advertising on athletic attire during the competition at the USATF Olympic Trials is "so unique that it suffers no actual or potential competitors." *Apple*, 586 F. Supp. 2d at 1198. Conclusory allegations of "uniqueness," like those offered in the complaint, have been firmly and routinely rejected. *See, e.g., Tanaka*, 252 F.3d at 1063 ("conclusory assertion that the 'UCLA women's soccer program' is 'unique' and hence 'not interchangeable with any other program in Los Angeles' is insufficient"); *Hicks*, *11-13 (rejecting argument that PGA Tour audience was unique). According to the complaint, Run Gum views advertising on athletes' competition apparel as a "significant component of [its] business-growth strategy for 2016," Compl. ¶ 49, but its "personal preference" to advertise during the Olympic Trials without being a USOC, USATF, or Olympic sponsor is "irrelevant to the antitrust inquiry." *Tanaka*, 252 F.3d at 1063; *see also Right Field Rooftops*, 87 F. Supp. 3d 874, 887 (N.D. Ill. 2015) ("arguments of consumer preferences . . . fall short of rendering it plausible that there exist no interchangeable substitutes for live Cubs games").

*                    *                    *

"[A]n antitrust plaintiff may not 'define a market so as to cover only the practice complained of, this would be circular or at least result-oriented reasoning.'" *Adidas*, 65 F. Supp. 3d at 1102 (citation omitted). Like the plaintiffs in *Adidas*, *Hicks*, *Spinelli*, *Tanaka*, and *Right Field Rooftops*, Run Gum concocted a "result-oriented," relevant market limited to the "product" that it wished to obtain. That relevant market ignores obvious substitutes and is improper as a matter of law, and the complaint should be dismissed accordingly.

Page 13 -   Defendant United States Olympic Committee's Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**C.      Run Gum Has Not Alleged a *Per Se* Violation of the Antitrust Laws.**

In an effort to broaden its allegations and avoid the rule of reason requirement to show anticompetitive effects in a properly defined relevant market, Run Gum suggests that the challenged conduct falls within the narrow scope of "horizontal" antitrust violations so pernicious and obviously anticompetitive that they are deemed *per se* unlawful. *E.g., Cal. Dental Ass'n. v. FTC,* 526 U.S. 756, 770-71 (1999) (*per se* treatment not appropriate unless anticompetitive effects are "obvious"). *Per se* treatment "is reserved for practices that experience has demonstrated are almost always anticompetitive." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1480 (9th Cir. 1986) *opinion modified on denial of reh'g*, 810 F.2d 1517 (9th Cir. 1987); *see also Int'l Healthcare Mgmt. v. Haw. Coal. for Health*, 332 F.3d 600, 605 (9th Cir. 2003) ("*Per se* categories [of antitrust liability] are not to be expanded indiscriminately to new factual situations.").

Run Gum's effort to secure from this Court *per se* condemnation of the USOC's and USATF's ASA-authorized production of the Olympic Trials is meritless. *E.g., Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 117 (1984) (NCAA limits on pricing and output of college football telecasts not subject to *per se* standard); *Tanaka*, 252 F.3d at 1063 (NCAA transfer rule not subject to *per se* standard):

*First*, no "horizontal" conspiracy among some amorphous group of manufacturers, let alone a *per se* unlawful one, is plausibly alleged in the complaint. To the contrary, Run Gum's conspiracy allegations contain "just ultimate facts" and not "evidentiary facts." *Kendall*, 518 F.3d at 1047; *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) ("plaintiffs cannot plead merely parallel conduct and allege conspiracy"; rather, "plaintiffs must plead evidentiary facts: who, did what, to whom (or with whom), where, and when."). "It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th

Page 14 -   Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
                   in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Cir. 2015). While replete with conclusory allegations that the USOC and USATF conspired with unnamed horizontal coconspirators, the complaint provides no evidentiary facts in support of those allegations. Similar to the allegations rejected in *Twombly* itself, "the pleadings mention[] no specific time, place, or person involved in the alleged conspiracies .... [and] the complaint . . . furnishes no clue as to which of the [alleged conspirators] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place." 550 U.S. at 565, n. 10. These allegations should be disregarded, and cannot save the complaint.

*Second*, the putative *per se* unlawful "group boycott" alleged in the complaint is simply implausible. It is implausible because, even taking the complaint in the most favorable light, it appears to allege that a group of unnamed *apparel* manufacturers, some of which may or may not be sponsors of the USOC, USATF, and/or individual athletes, conspired to boycott a *chewing gum* manufacturer. A *per se* group boycott can occur, however, only when "[a] group of competitors threaten[s] to withhold business from third parties unless those third parties would help them injure their *directly competing rivals*." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (emphasis added). Here, *per se* treatment of any alleged group boycott is unavailable because Run Gum is not directly competing with USATF, USOC, apparel manufacturers, or any of a host of other hypothetical unnamed companies; it competes instead with producers of "coffee or energy drinks for athletes." Compl. ¶ 15.

The group boycott theory is also implausible "in light of basic economic principles." *William O. Gilley*, 588 F.3d at 662 (quoting *Twombly*, 550 U.S. at 556). The USOC's uniform marks limitations require USATF to conduct the Olympic Trials in accordance with Rule 50 of the Olympic Charter. Rule 50 in turn, provides for the challenged "standard manufacturer" exception to its general ban on any "form of publicity or propaganda" on athletes' apparel or equipment. The exception allows "the identification . . . of the manufacturer of the article or equipment concerned, provided that such identification shall not be marked conspicuously for advertising purposes." Compl. ¶ 52. Nothing in that exception distinguishes between a "standard

Page 15 -   Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
             in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

manufacturer" that sponsors the USOC or USATF and a "standard manufacturer" that does not—the complaint alleges, in essence, that USOC and USATF are gratuitously enforcing a rule for the benefit of non-sponsors. *See* Compl. ¶ 6 ("only one of USATF's six 'official sponsors' . . . provides a good or service *that relates to sports in any way*" (emphasis added)).

*Finally*, as for the price-fixing theory that Run Gum alleges in passing, the only agreement actually identified in the complaint—and the only one alleged to suppress the price of individual sponsorships—is that between the USOC and USATF. That agreement is indisputably vertical, and "[v]ertical agreements . . . are analyzed under the rule of reason" standard that plaintiff has not met. *In re Musical Instruments*, 798 F.3d at 1191 (citations omitted).

## **CONCLUSION**

For the reasons set forth above, the complaint should be dismissed with prejudice.

DATED this 26th day of February, 2016.

MILLER NASH GRAHAM & DUNN LLP

s/ *Bruce L. Campbell*
Bruce L. Campbell, P.C., OSB No. 925377
bruce.campbell@millernash.com
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

COVINGTON & BURLING LLP
Derek Ludwin (*admitted pro hac vice*)
dludwin@cov.com
Alexander E. Ramey (*admitted pro hac vice*)
aramey@cov.com
One CityCenter
850 Tenth Street N.W.
Washington, D.C.  20001-4956
Telephone:  (202) 662-5429
Facsimile:   (202) 778-5429

Attorneys for Defendant
United States Olympic Committee

Page 16 -  Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing Defendant United States Olympic

Committee's Motion to Dismiss and Memorandum in Support on:

Timothy P. Landis, OSB No. 92617
E-mail:  tim@tlandislaw.com
TIMOTHY LANDIS, P.C.
One S.W. Columbia Street, Suite 1110
Portland, Oregon  97258
Tel:  (503) 220-1331
Fax: (503) 227-7829

Attorney for Plaintiff
Gold Medal LLC d/b/a Run Gum

Michael D. Hausfeld
mhausfeld@hausfeld.com
Sathya S. Gosselin
sgosselin@hausfeld.com
Swathi Bojedla
sbojedla@hausfeld.com
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, D.C.  20006
Tel:  (202) 540-7200
Fax: (202) 540-7201

Attorney for Plaintiff
Gold Medal LLC d/b/a Run Gum

Michael P. Lehmann
mlehmann@hausfeld.com
Bonny E. Sweeney
bsweeney@hausfeld.com
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, California  94111
Tel: (415) 633-1908
Fax: (415) 358-4980

Attorney for Plaintiff
Gold Medal LLC d/b/a Run Gum

Robert E. Sabido
rsabido@cosgravelaw.com
COSGRAVE VERGEER KESTER, LLP
500 Pioneer Tower
888 S.W. Fifth Avenue
Portland, Oregon  97204
Tel:  (503) 323-9000
Fax:  (503) 323-9019

Attorney for Defendant
USA Track & Field

Page A -   Certificate of Service

Emily H. Stone
estone@loeb.com
Douglas N. Masters
dmasters@loeb.com
LOEB & LOEB
321 N. Clark, Suite 2300
Chicago, Illinois 60654
Tel:  (312) 464-3100
Fax: (312) 464-3111

Nathan J. Muyskens
nmuyskens@loeb.com
LOEB & LOEB
901 New York Avenue N.W. Suite 300 East
Washington, D.C.  20001
Tel:  (202) 618-5001
Fax:  (202) 618-5022

Attorney for Defendant
USA Track & Field

by the following indicated method or methods on the date set forth below:

☒        **CM/ECF system transmission.**

DATED this 26th day of February, 2016.

s/ *Bruce L. Campbell*
Bruce L. Campbell, P.C., OSB No. 925377

Attorneys for Defendant
United States Olympic Committee

Page B -    Defendant United States Olympic Committee's Motion to Dismiss and Memorandum
in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204